IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| REBECCA DONES-ESCALERA,<br><br>Plaintiff<br><br>v.<br><br>MICHAEL J. ASTRUE, Commissioner<br>of Social Security,<br><br>Defendant | CIVIL NO. 09-1893 (JP) |

**OPINION AND ORDER**

Before the Court is an action brought under Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), as amended, to review a final determination by the Commissioner of Social Security ("Commissioner") denying Plaintiff Rebecca Dones-Escalera ("Plaintiff" or "Claimant") disability insurance benefits. The Court finds that the Commissioner's decision is not supported by substantial evidence, and hereby **VACATES** and **REMANDS** the same for further proceedings consistent with this Opinion and Order.

**I.   INTRODUCTION**

Plaintiff filed an application for disability benefits in May 2004, alleging disability beginning in November 2003. On March 12, 2005, Plaintiff's claim was denied. Plaintiff then filed a request for reconsideration, which also returned an unfavorable decision on September 21, 2005. Subsequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). On July 20,

CIVIL NO. 09-1893 (JP)          -2-

2007, the ALJ denied Plaintiff's application. The Appeals Council then denied Plaintiff's request for review of the ALJ decision on August 7, 2009.

Plaintiff has a high school degree, has studied in several technical areas (Tr. 100, 1381) and was thirty five years old at the time of the ALJ's decision (Tr. 78). Over the last fifteen years, Plaintiff worked: (1) at Alpha Page sending messages; (2) at Mr. Beepers sending messages; (3) three months at Pollo Tropical in kitchen preparation; (4) at Saint James Security as a security guard; (5) for six months at 911 emergency services as an operator; (6) at Jack Henry Food as an assistant manager; and (7) at Island Pizza as a driver and assistant manager (Tr. 95, 111). Plaintiff argues that the Commissioner's determination that she is not disabled is not supported by substantial evidence on the record.

## II. **STANDARD OF REVIEW**

The Commissioner, not this Court, is charged with the duty of weighing the evidence and resolving material conflicts in the testimony. González García v. Secretary of Health & Human Services, 835 F.2d 1, 3 (1st Cir. 1987) (citing Richardson v. Perales, 402 U.S. 389, 399 (1971)). In reviewing Plaintiff's appeal, the Court does not make a *de novo* determination. Lizotte v. Secretary of Health & Human Services, 654 F.2d 127, 128 (1st Cir. 1981). Instead, the Court "must affirm the [Commissioner's] resolution, even if the record arguably could justify a different resolution, so long

CIVIL NO. 09-1893 (JP)          -3-

as it is supported by substantial evidence." <u>Rodríguez Pagán v. Secretary of Health & Human Services</u>, 819 F.2d 1, 3 (1st Cir. 1987).

### III. **THE AGENCY'S FINDINGS**

On July 20, 2007, ALJ Solomon Goldman came to the following conclusions (Tr. 15-26):

1.  The claimant last met the insured status requirements of the Social Security Act on June 30, 2006.

2.  The claimant did not engage in substantial gainful activity during the period from her alleged onset date of August 4, 2002, through her date last insured of June 30, 2006 (20 C.F.R. §§ 404.1520(b) and 404.1571, *et seq.*).

3.  Through the date last insured, the claimant had the following severe impairments: disorders of the back and affective disorders (20 C.F.R. § 404.1520(c)).

4.  Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526).

5.  After careful consideration of the entire record, the ALJ found that, through the date last insured, the claimant had the residual functional capacity ("RFC") to perform light work except that she should avoid concentrated exposure to extreme cold and heat, wetness and humidity, and fumes, odors, dusts, gases, and poor

CIVIL NO. 09-1893 (JP)            -4-

ventilation.  From the mental standpoint, the claimant is able to understand, remember, and carry out simple instructions, maintain her attention and concentration to complete simple tasks, make simple work-related decisions, sustain persistence in the completion of tasks, respond appropriately to supervision, co-workers, and usual work situations; and deal with changes in a routine work setting.

    6.   Through the date last insured, the claimant's past relevant work as a security guard did not require the performance of work-related activities precluded by the claimant's RFC (20 C.F.R. § 404.1565).

    7.   The claimant was not under a disability as defined in the Social Security Act, at any time from August 4, 2002, the alleged onset date, through June 30, 2006, the date last insured (20 C.F.R. § 404.1520(f)).

**IV.**   **ANALYSIS**

    **A.**   **Disability Defined (Qualifying Criteria)**

Title II of the Social Security Act, as amended, provides for the payment of insurance benefits to persons who have contributed to the program and who suffer from a physical or mental disability. 42 U.S.C. § 423(a)(1)(D).  The central question in cases of this sort is whether the claimant is "disabled" within the meaning of 42 U.S.C. § 423(d).  Sherwin v. Secretary of Health & Human Services, 685 F.2d 1, 2 (1st Cir. 1982).  That provision defines "disability" as the:

CIVIL NO. 09-1893 (JP)          -5-

> . . . inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . [lasting at least a year and] of such severity that [the claimant] . . . is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, . . . or whether he would be hired if he applied for work.

42 U.S.C. § 423(d).

It is well established that when applying this statutory standard, Plaintiff has the initial burden of showing a disability serious enough to prevent her from working at her former job. If the claimant makes out this *prima facie* case of disability, the burden then shifts to the Commissioner to show the existence of other jobs in the national economy that the claimant can nonetheless perform. Ortiz v. Secretary of Health & Human Services, 890 F.2d 520, 524 (1st Cir. 1989) (per curiam); Torres v. Secretary of Health & Human Services, 677 F.2d 167, 168 (1st Cir. 1982).

The Commissioner has established a five-step process for determining whether an individual is disabled. See 20 C.F.R. § 404.1520. The first three steps are threshold determinations. At steps one and two, the Court considers: (1) whether a claimant is working in a substantially gainful activity ("SGA"); and (2) whether the claimant has an impairment. If the claimant is unemployed and has an impairment, the Court considers at step three whether the impairment is found explicitly or is equal to one found in Appendix 1

CIVIL NO. 09-1893 (JP)           -6-

of the regulations governing disability.  If so, the claimant is considered disabled.

If the impairment is not listed or equal to an impairment listed in Appendix 1 of the regulations, the decision maker proceeds to step four, and determines whether the claimant is able to perform work in his or her past, relevant occupational field.  If this is not the case, the ALJ must then determine at step five whether the claimant can perform an SGA in the national economy.  See 20 C.F.R. § 404.1520; Forney v. Apfel, 524 U.S. 266, 268 (1998); Goodermote v. Secretary of Health & Human Services, 690 F.2d 5, 7 (1st Cir. 1982).

### B.  **Plaintiff's Arguments Regarding the ALJ's Decision**

In his decision to deny Plaintiff's application, the ALJ analyzed the first four steps for determining whether an individual is eligible for disability benefits and held that: (1) Plaintiff had not been employed since the alleged onset date of her claimed impairment; (2) Plaintiff had severe impairments, including disorders of the back and affective disorders; (3) her impairment or combination of impairments did not meet or equal "one" or "any" of the impairments listed in the guidelines; and (4) Plaintiff was able to perform her past relevant work as a security guard.

Plaintiff claims that the ALJ's conclusion about her not being eligible for disability benefits was incorrect and unsupported by substantial medical evidence in the record.  More specifically, Plaintiff raises two main arguments: (1) that the ALJ is ill-equipped

CIVIL NO. 09-1893 (JP)            -7-

as a lay person to make his own medical determinations; and (2) that the ALJ ignored and/or selectively chose what evidence to base his decision upon.

Plaintiff describes instances where the ALJ was ill-equipped as a lay person to make his own medical determinations. For example, she explains that since the most recent RFC assessment on record was from before the January 2006 accident, the ALJ should have enlisted a medical expert or remanded the case to the state agency so that an updated RFC could be prepared. As such, the ALJ did not have the ability to conclude that Plaintiff was capable of performing light work on her date last insured without medical expert testimony supporting this administrative decision.

Furthermore, Plaintiff describes several instances where the ALJ allegedly ignored evidence and/or selectively chose what evidence to base his decision upon. Plaintiff begins by explaining that the ALJ intertwined events from before and after the January 2006 accident in a deceptive and confusing manner. Plaintiff contends these time periods should have been kept separate since she suffered fractures and wounds from the January 2006 accident which allegedly did not heal and disabled her through the date last insured.

Plaintiff also alleges her complaints of pain were supported by the record including her symptoms associated with neck pain, back pain, hip pain, leg pain, leg infection, open wounds, and from various surgeries. Plaintiff explains that the ALJ could not

CIVIL NO. 09-1893 (JP)          -8-

improperly disregard her subjective complaints of pain simply because there was no other objective evidence by a medical expert to support her alleged complaints.  Plaintiff argues that there should have actually been a finding of disability since she presented clinical evidence of a condition that could reasonably be expected to produce the symptoms she experienced.

Plaintiff also claims the ALJ allegedly only cited evidence favorable to the Commissioner and disregarded evidence to the contrary.  Plaintiff specifies that the ALJ adopted into his opinion a hypothetical presented to the vocational expert which did not include all of Plaintiff's conditions.

### C.   Court's Analysis

#### 1.   *Working in Substantially Gainful Activity*

The ALJ found that Plaintiff had satisfied the first element because she had not engaged in substantial gainful activity since the alleged onset of her disability on August 4, 2002 (Tr. 15).  This element is therefore not in dispute.

#### 2.   *Existence of Severe Impairment*

As to step two, the ALJ found that the medical evidence revealed that Plaintiff suffered from the following severe impairments: disorders of the back and affective disorders (Tr. 15).

The ALJ viewed the record that shows Plaintiff received multiple traumas to her cervical and lumbar region, shoulders, and left arm and leg as a result of a motor vehicle accident (Tr. 15).  She was

CIVIL NO. 09-1893 (JP)         -9-

diagnosed as having a cervical sprain, and cervical, dorsal and lumbosacral myositis (Tr. 15-16). A Magnetic Resonance Imaging study also demonstrated syringohydromalia C6-C7 (Tr. 15).

The record also shows that Plaintiff has a longstanding history of psychiatric treatment (Tr. 16). The ALJ found that her depressive disorder only imposed moderate limitations to her functional capability (Tr. 16). The ALJ also found that Plaintiff's ability to perform basic work related activities is affected by the combination of the aforementioned impairments (Tr. 16).

Although Plaintiff also alleged a disability due to hand pain, chronic migraine, and a history of bronchial asthma, the ALJ found that the record failed to disclose that these conditions have caused undue difficulties or significant limitations in her functional capacity (Tr. 16). The ALJ added that Plaintiff should avoid concentrated exposure to environmental factors (Tr. 16).

Based on the Court's review of the record, the Court finds that there is substantial evidence to support the ALJ's findings that Plaintiff did suffer from severe impairments, but that said impairments are limited to disorders of the back and affective disorders.[1]

---

1.   The Court notes Plaintiff did not present any arguments as to this element.

CIVIL NO. 09-1893 (JP)        -10-

### 3. *Whether Impairments Rise to Level of Disability*

As to step three, there is substantial evidence to support the ALJ's conclusion that the record failed to establish that Plaintiff is subject to an impairment or combination of impairments which meets or equals the regulatory requirements. The ALJ considered two impairment listings: Listing 1.04 (disorders of the spine) and Listing 12.04 (affective disorders). After analyzing the record, the ALJ found that Plaintiff did not meet the criteria required by the applicable sections in the above listings.[2]

### 4. *Ability to Perform Past Relevant Work*

The ALJ found that Plaintiff retained an RFC that was fully compatible with the physical and mental demands of her past relevant work as a security guard (Tr. 25). In making a determination regarding the fourth factor, the ALJ considered all symptoms along with objective medical evidence and other evidence, including opinion evidence in accordance with regulatory requirements (Tr. 17-18). The ALJ, after reviewing the entire record, found that Plaintiff had the RFC to perform work at the light exertional level that was simple, routine and repetitive in nature (Tr. 25).

It was determined that Plaintiff had the physical capacity to perform light work as long as she avoided concentrated exposure to extreme cold and heat, wetness and humidity, and fumes, odors, dusts,

---

2.   The Court notes that Plaintiff did not present any arguments as to this element.

CIVIL NO. 09-1893 (JP)            -11-

gases and poor ventilation (Tr. 17).  It was also decided that Plaintiff had the mental capacity to understand, remember and carry out simple instructions, maintain her attention and concentration to complete simple tasks, make simple work-related decisions, sustain persistence in the completion of tasks, respond appropriately to supervision, co-workers, and usual work situations, and deal with changes in a routine work setting (Tr. 17).

In determining Plaintiff's RFC, the ALJ considered the assessments made in January 2005 which concluded that Plaintiff had the physical RFC for medium work with the ability to frequently lift and/or carry 25 pounds and occasionally 50 pounds (Tr. 214-221). Also, it was determined that Plaintiff could stand or walk for six hours in an eight hour workday and sit for the same length of time (Tr. 215).  Said assessment was affirmed by a separate physician in September 2005.  After analyzing the record which included the January 2006 accident, the ALJ determined that Plaintiff's RFC needed to be lowered and that her mental and physical impairments imposed limitations on her ability to lift and/or carry more than twenty pounds at a time.

Plaintiff argues that the ALJ needed to obtain an updated RFC which would account for the January 2006 accident by retaining a medical expert or remanding the case to the appropriate state agency. Defendant counters that substantial evidence supports the ALJ's RFC finding because the ALJ properly considered all the evidence on the

CIVIL NO. 09-1893 (JP)          -12-

record including the effects of the 2006 accident.  The Court will focus its analysis on the need for a new physical RFC since it is the dispositive issue in the case.

ALJs are generally not qualified to assess RFC based on a bare medical record.  Gordils v. Secretary of Health & Human Services, 921 F.2d 327, 329 (1st Cir. 1990); Rivera-Torres v. Secretary of Health & Human Services, 837 F.2d 4, 6-7 (1st Cir. 1988).  However, the ALJ is not precluded from rendering common sense judgments about functional capacity, as long as he or she does not overstep the bounds of a lay person's competence.  Gordils, 921 F.2d at 329.

Here, after the January 2005 RFC was affirmed in September 2005, Plaintiff suffered another accident on January 15, 2006.  On the date of the accident, Plaintiff was diagnosed with, *inter alia*, tibia fibula left side open fracture, pelvic diathesis, and transverse fracture of the fibula (Tr. 283).  Also, Plaintiff was found to have abrasions and lacerations (Tr. 286-287).  On January 26, 2006, Plaintiff underwent surgery in which lacerations were noted and surgery was performed on her right leg, hip and shoulder. (Tr. 680-681).

On February 1, 2006, Plaintiff was receiving antibiotics because she had an infection in her left leg (Tr. 725).  Plaintiff was administered morphine for the pain on February 4 and 5 (Tr. 1088). Plaintiff was still receiving antibiotics on February 13, 2006 (Tr. 725).  Plaintiff was discharged on February 17, 2006 (Tr. 735).

CIVIL NO. 09-1893 (JP)           -13-

Plaintiff was then referred for rehabilitation, but was readmitted to the Puerto Rico Medical Center on March 17, 2006 (Tr. 381-589). She was discharged on March 24, 2006 (Tr. 381). In the discharge summary, Plaintiff was diagnosed with left leg deep vein thrombosis, bronchial asthma, left leg fracture, and right hip and femur fractures (Tr. 381-382). Also, Plaintiff was listed as bedridden (Tr. 382).

On March 24, 2006, Plaintiff returned to St. Jude Nursing Home to continue her rehabilitation (Tr. 266). At St. Jude's Nursing Home, Plaintiff is listed as suffering from a fibula comminuted fracture and a right hip fracture (Tr. 267). Plaintiff was discharged from St. Jude's Nursing Facility on June 5, 2006 (Tr. 321-323). Progress notes from June 9, 2006 noted left leg pain, bronchial asthma, hypoglycemia, fracture of the left tibia and fibula, fracture of the right hip and deep vein thrombosis (Tr. 366). Plaintiff also provided other medical records detailing her progress (Tr. 365, 360-362, and 550).

After considering the record and arguments, the Court finds that the ALJ overstepped the bounds of a lay person and rendered a medical judgment. The medical records after the January 2006 accident indicate conditions which, without further evaluation by a medical expert, do not appear to be mild enough to make it obvious to a layperson that Plaintiff's ability to perform her previous job as a security guard was unaffected. The injuries suffered require more

CIVIL NO. 09-1893 (JP)           -14-

than a layperson to evaluate the effects on Plaintiff's RFC. As such, the ALJ should have enlisted a medical expert or remanded the case to the appropriate state agency to prepare an updated RFC accounting for the effects of Plaintiff's January 2006 accident.

Defendant also argues that the Court should affirm the ALJ, even if Plaintiff suffered limitations beyond those in the RFC determined by the ALJ, because Plaintiff failed to meet her burden of proving that her impairments resulted in functional limitations which prevented her from performing her past work as a security guard.

Plaintiff has the burden of making some reasonable threshold showing that she cannot return to her former employment because of her alleged disability. See Pitchard v. Schweiker, 692 F.2d 198, 201 (1st Cir. 1982); González-Pérez v. Secretary of Health, Education & Welfare, 572 F.2d 886, 887 (1st Cir. 1978). Initially, Plaintiff must produce relevant evidence of the physical and mental demands of her previous work. Santiago v. Secretary of Health & Human Services, 944 F.2d 1, 5 (1st Cir. 1991). Said evidence can be testimonial, subjective statements made in the application, or other documents provided by the agency. Id. (citing May v. Bowen, 663 F. Supp. 388, 393 (D. Me. 1987)). At the very least, Plaintiff must present some information about the activities in her past work, including those which can no longer be performed. Id. However, "not only must the [Plaintiff] lay the foundation as to what activities her former work entailed, but she must point out (unless obvious)-so as to put in

CIVIL NO. 09-1893 (JP)          -15-

issue-how her functional incapacity renders her unable to perform her former usual work." Id.

After considering the evidence, the Court finds that Plaintiff properly laid a foundation for her activities at her former work and pointed out how her alleged functional incapacity prevents her from performing her job as a security guard. Plaintiff has indicated that in her security guard job she was stationed at the entry point of a gated neighborhood writing down the name of people and license plate numbers of cars entering the neighborhood (Tr. 115). Also, the job was eight hours a day and five days a week (Tr. 115). Plaintiff sat for eight hours (Tr. 115).

With regard to her inability to perform her former job, Plaintiff testified at the hearing that she could not sit for more than two hours (Tr. 1382-1383). Defendant argues that Plaintiff's allegation that she could not sit for more than two hours is not supported by the medical record. However, Plaintiff is not required to demonstrate her inability to perform her previous job, but instead must simply put into issue a functional loss which precludes performance of her previous work activities. See id. at 5-7.

Since her previous job as a security guard required her to sit for eight hours and Plaintiff testified that she could not sit for more than two hours, Plaintiff sufficiently put at issue her inability to perform her previous job. Once Plaintiff crossed said threshold, "the ALJ has the obligation to measure the requirements

CIVIL NO. 09-1893 (JP)          -16-

of former work against the claimant's capabilities; and, to make that measurement, an expert RFC evaluation is ordinarily essential unless the extent of functional loss, and its effect on job performance, would be apparent even to a lay person." Id. at 7.  As already explained, the extent of functional loss in the instant case required an expert RFC evaluation to account for the effects of Plaintiff's January 2006 accident because the extent of Plaintiff's functional loss is not apparent to a lay person.  As such, Defendant's argument fails.

## V.  CONCLUSION

Thus, the Court **VACATES** the Commissioner's determination that Plaintiff is not disabled.  The Court further **REMANDS** the case for the ALJ: (1) to reevaluate step four of the analysis after the ALJ either enlists a medical expert or remands the case to the appropriate state agency in order to obtain an updated RFC which will account for the effects of Plaintiff's January 2006 accident; and (2) if necessary, to continue to step five.  Judgment will be entered accordingly.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 27th day of August, 2010.

                                                   s/Jaime Pieras, Jr.
                                                     JAIME PIERAS, JR.
                                        U.S. SENIOR DISTRICT JUDGE